FILED
2017 Apr-06  PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **JUDITH MOON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | |
| | ) | _____ |
| **TOWN OF MUNFORD and** | ) | |
| **DAVID DABBS, LEE GARRISON,** | ) | **JURY TRIAL DEMANDED** |
| **and PEGGY BUSSIE in their** | ) | |
| **individual and official capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## COMPLAINT

---

## JURISDICTION AND VENUE

1.      This Complaint seeks legal and equitable relief to redress violations by

Defendants of Plaintiff Judith Moon's rights secured by the following:

      a.      The Age Discrimination in Employment Act of 1967 ("ADEA"),

            29 U.S.C. §§ 621-634, as amended;

      b.      Alabama Age Discrimination in Employment Act ("AADEA"),

            Ala. Code 1975, § 25-1-20;

      c.      The general laws of the State of Alabama.

2.      Federal subject matter jurisdiction exists pursuant to:

a.    28 U.S.C. § 1331, 1343(a)(3) and 1367; and

b.    The ADEA, 29 U.S.C. § 626(c)(1).

## PARTIES

3.     Plaintiff Judith Moon (hereinafter "Moon" or "Plaintiff") is a resident of Etowah County, Alabama, and is over the age of nineteen.  Moon was employed by Defendant Town of Munford as Director of the Munford Senior Citizens Center.

4.     Defendant Town of Munford (hereinafter "Munford" or "Defendant") is a municipality in Talladega County, Alabama.  Munford employs at least 20 individuals within the meaning of the ADEA.

5.     David Dabbs (hereinafter "Dabbs" or "Defendant" ) is the former mayor of Munford and supervised Moon as Director of the Munford Senior Citizens Center. Dabbs is over the age of nineteen and a resident of Talladega County, Alabama.  As mayor, Dabbs was an officer and agent of Munford.

6.     Lee Garrison (hereinafter "Garrison" or "Defendant") is a member of the City Council of Munford.  Garrison is over the age of 19 and a resident of Talladega County, Alabama.  As a council member, Garrison was an officer and agent of Munford.

2

7.     Peggy Bussie (hereinafter "Bussie" or "Defendant") is the town clerk for Munford.  Bussie is over the age of 19 and a resident of Talladega County, Alabama. As town clerk, Bussie was an officer and agent of Munford.

## NATURE OF ACTION

8.     Plaintiff Moon brings this action to redress unlawful employment practices and acts of intentional discrimination, retaliation, slander, and defamation that occurred during and after Moon's employment with the Town of Munford.  This action seeks to redress grievances resulting from the acts of Defendants committed with respect to Moon's employment and termination; and for a permanent injunction restraining Munford and its employees, officers, and agents from maintaining a policy and practice of discriminating, harassing, and retaliating against Moon and others similarly situated on account of age.

9.     Moon also seeks reinstatement, back pay, front pay, liquidated damages, compensatory and punitive damages, where applicable, in addition to costs, interest, and attorneys' fees.

## ADMINISTRATIVE PROCEDURES

10.     On April 19, 2016, within 180 days of learning of the acts of discrimination of which she complains, Moon filed a Charge of Discrimination with

the Equal Employment Opportunity Commission, ("EEOC") alleging age discrimination.  **(Attached herein as Exhibit A).**

11.     The EEOC issued a Dismissal and Notice of Rights to Moon on January 9, 2017.  **(Attached herein as Exhibit B).**  Moon received the notice on January 12, 2017.

12.     Moon has met all prerequisites for bringing this action.

## STATEMENT OF FACTS

13.     Plaintiff Moon is 76 years of age.

14.     Moon served as Director of the Munford Senior Citizens Center ("the Center") from the date of its opening in 2005 until her termination on November 5, 2015.

15.     Moon's supervisor at all times relevant to this Complaint was former mayor David Dabbs, who was under the age of 50.

16.     The Center offered services and activities to senior citizens in Munford and surrounding communities.  The Center provided hot lunches on weekdays and delivered meals to senior citizens who were homebound.  Clients who were financially able paid a small amount for these meals; otherwise, Munford did not collect any money for the meals and bore the cost.

17.     The Center received guidance from an Advisory Board comprised of five members.  The members included Mumford city council members, senior citizens from the community, and non-senior citizens of the community.  The members at all times relevant to this Complaint included Council Member Shane Turner and community members Bobbie Lackey, Nelda Nelson, Margie Turner, and James Swinford.

18.     Approximately two (2) weeks prior to Moon's termination, another Center employee, Brenda Vickers, resigned.  Ms. Vickers was in her late 60's.  For approximately four (4) years, Vickers had helped maintain the Center and tested and delivered meals to the homebound.  Vickers subsequently asked Moon to rehire her.  Moon asked Mayor Dabbs to rehire Ms. Vickers, but Mayor Dabbs refused.

19.     Several candidates applied to replace Ms. Vickers.  Mayor Dabbs did not interview or consider any of these candidates.  Mayor Dabbs hired Tiffany Kuhlow, a female in her late 20's/early 30's, to replace Vickers.  Ms. Kuhlow's only prior food service experience was her brief employment at Jack's making biscuits.  Mayor Dabbs did not consult with Moon before hiring Ms. Kuhlow, undermining Moon's authority and ability to lead as Director of the Center.

20.     Advisory Board Member Bobbie Lackey filed a written grievance with Munford about Mayor Dabbs not interviewing any of the other applicants and

excluding Moon from the selection of a replacement for Ms. Vickers.  Mayor Dabbs

nonetheless proceeded with his unilateral hiring decision for Vickers' replacement.

21.     From the beginning of Moon's employment in 2005, when the Center

needed supplies for senior activities, Moon purchased the items with her own money

and saved the receipts until she had several to turn in for reimbursement.  These

receipts were generally for small purchases of under $ 20.00.  Rather than turn in a

single receipt for each small purchase, Moon's practice throughout her employment

had been to turn in receipts for reimbursement when she had several collected.  Moon

used the same practice consistently from 2005 to 2015 without being instructed to

submit receipts otherwise.

22.     During the last three (3) or four (4) years of Moon's employment, while

Dabbs was mayor, he never told Moon to submit receipts for reimbursement any

differently.

23.     Between 2005 and 2014, Moon submitted receipts for reimbursement to

the treasurer of the Advisory.  In 2014, Mayor Dabbs began ordering Moon to submit

receipts to the town clerk, Defendant Peggy Bussie.

24.     Moon turned in all other paperwork she was required to maintain on a

weekly or monthly basis as directed.  Each month, Moon turned in totals of donations

she had collected and deposited in the bank each day, along with time sheets for the Center employees.

25.     Each week, the Area Agency on Aging ("AAA") picked up daily sign-in sheets documenting attendance by clients and reports on the number of meals the Center served or delivered.  None of the documentation Moon was charged with maintaining was required to be turned in on a daily or per occurrence basis.  Moon consistently turned in her monthly and weekly paperwork in a timely and proper manner.

26.     In 2014 and 2015, Munford underwent an audit conducted by accountant Joan Sanders.  Ms. Sanders conducted the 2015 audit in September 2015.

27.     On two (2) separate occasions during the 2015 audit, Moon contacted Defendant Bussie, the town clerk, to ask whether Ms. Sanders had everything she needed from the Center to complete the audit.  Both times, Bussie told Moon that Ms. Sanders had all the documentation she needed.  No one discussed with Moon any issues pertaining to the timing of her turning in receipts from the Center.  No one requested any additional information from the Center for the audit.

28.     On November 5, 2015, Bussie called Moon at the Center and requested that she come to the town hall to meet with Mayor Dabbs.  Ms. Lackey was present with Moon, and they discussed that the meeting was likely about the grievance Ms.

Lackey filed regarding the hiring of Ms. Vickers' replacement.   Ms. Lackey accompanied Moon to the meeting.

29.     Moon and Ms. Lackey met with Mayor Dabbs and Council Member Lee Garrison in the Mayor's office.   Mayor Dabbs informed Moon for the first time that she needed to turn in receipts within one day of her expenditure.   Mayor Dabbs also complained that the number of clients at the Center had declined.[1]   Moon advised Mayor Dabbs that was inaccurate, and that the Center had three (3) new clients join in the last few weeks.

30.     Mayor Dabbs then told Moon he was terminating her employment for failing to turn in paperwork in a timely manner and that the center needed a "new, younger" Director.   Mayor Dabbs also told Moon that her "mind was going" in the presence of Ms. Lackey and Mr. Garrison.   Prior to this meeting, neither Mayor Dabbs nor anyone else had ever complained to Moon about her methods or frequency of turning in paperwork, or concerns about client attendance.

31.     The Munford City Council endorsed Mayor Dabbs' termination of Moon in a letter signed by Mayor Dabbs and council members Lee Garrison, Shane Turner, Wade Champion, Phillip McWilliams, and Tim Lipham.

---

[1]For most of the ten (10) years Moon was the Director, the number of Center clientele had remained consistently around 33 senior citizens.  This number fluctuated base on members passing away and new members joining.

32.     Moon asked Mayor Dabbs during the November 5, 2015 meeting if she could say goodbye to the clients.  Dabbs told Moon she was not allowed back into the Center.  Mayor Dabbs also requested Moon's key.  Moon explained that she had personal belongings to remove from the Center that she brought for clients to use over the course of her ten (10) years as Director.  Later that afternoon, Mayor Dabbs consented to Moon entering the Center to tell the clients goodbye and collect her personal belongings.

33.     Beginning Friday, November 6, 2015, and for several days afterwards, Moon and some volunteers helped pack Moon's personal belongings at the Center.

34.     On November 6, 2015, Mayor Dabbs, came into the Center and announced to the clients that Moon had been terminated and that the Center was closing for renovations until the start of the new year.  Several clients asked Mayor Dabbs why Moon had been terminated.  Mayor Dabbs told the clients that the Center would be like new after the renovations and would have a "new, younger" director. Several clients said that if Moon was not the Director, they would not return to use the Center.

35.     On November 9, 2015, Moon requested a copy of her personnel file from Mayor Dabbs.  Mayor Dabbs told Moon to request her personnel file from Defendant

Bussie.  Moon requested her file from Bussie multiple times.  Bussie told Moon that Munford did not maintain any personnel files on employees, only payroll records.

36.    On November 11, 2015, Mayor Dabbs returned to the Center while Moon  was gathering her remaining personal belongings.  Mayor Dabbs accused Moon of stealing an embroidery machine from the Center in front of clients.  Moon explained to Mayor Dabbs that the machine was her personal machine that she loaned to the Center so clients could use it.  Mayor Dabbs then accused Moon of diverting funds from the Center to purchase the embroidery machine.  Moon further explained to Mayor Dabbs that she purchased the machine with her own funds.  Mayor Dabbs told Moon she needed to leave the Center and did not want to see her on the Center grounds again.

37.    Prior to terminating Moon, Mayor Dabbs told several town employees that he was going to terminate Moon for several conflicting reasons, including that "she wasn't doing her job" and that she engaged in "wrongful conduct."  Following Moon's termination, Mayor Dabbs, Bussie, and Council Member Garrison began to tell community members that Moon stole money from the Center and that Munford had records to prove it.

38.    Moon never stole any funds or property from the Center.

39.     Moon had limited access to senior Center funds.  Moon was never a signatory of the Center's bank account.  Moon's only involvement with the Center's bank account was to deposit donations made to the Center and to keep a running total of the deposits along with the bank records.

40.     The Center collected donations from clients in a locked box and Moon deposited those funds into the Center bank account daily.  Moon recorded these deposits and made a report to the Advisory Committee at its monthly meeting.  Moon also provided written reports about the daily deposits to Ms. Bussie.  Moon complied with all procedures in handling Center donations.

41.     Prior to Moon's termination, when Mayor Dabbs initially informed her that the Center would be closed for renovations during the November and December holidays, Moon urged him to wait until after the holidays because it was important for the seniors to have activities at that time.  Mayor Dabbs insisted on closing the Center during the holidays.  During the holidays in November and December 2015, Moon arranged three (3) meetings for seniors at a local restaurant or church.

42.     Defendants replaced Moon with Tawana McWilliams, who is over twenty (20) years younger than Moon.  Ms. McWilliams had no prior experience in working with senior citizens, managing employees or volunteers, or as a Director of

any program.  Ms. McWilliams' only known prior experience was as a part-time librarian and selling Mary Kay cosmetics.

43.     Munford had never received any complaints from clients of the Center or members of the community regarding Moon's operation of the Center or its activities.

44.     Defendants had never disciplined Moon for any work performance issues during her ten (10)-year tenure prior to her termination.

## COUNT ONE

## AGE DISCRIMINATION

45.     Moon adopts and realleges 1-44 as if fully recited herein.

46.     This Count seeks to redress the unlawful employment practice of age discrimination and retaliation conducted by Munford.  Munford ratified age-based discriminatory conduct of its agents, officers, and employees that is prohibited by federal law.

47.     This is an action to redress grievances resulting from acts that Munford, its agents, officers, and employees committed with respect to Moon's employment and for a permanent injunction restraining Munford from maintaining a policy and practice of harassing, discriminating, and retaliating against the Moon and other persons similarly-situated on account of age.

48.     Moon is 76 years of age and a member of a protected group.

49.     Moon is qualified to perform the job duties of the Director of Munford Senior Center and has conducted duties consistent with that position in a satisfactory manner for over ten (10) years.

50.     Moon was subjected to age-based discriminatory treatment and age biased remarks by Mayor Dabbs.

51.     In Moon's termination meeting, Mayor Dabbs announced in the presence of the Advisory Committee President and Councilman Garrison that Moon's "mind was going" and that the Center Director needed to be a "new, younger" person.

52.     Mayor Dabbs announced before clients of the Center that he terminated Moon because the Center needed a new, younger Director.

53.     Mayor Dabbs further demonstrated his bias against older employees by refusing to rehire Ms. Vickers, who was an experienced, qualified employee in her late 60's when she requested to return to work at the Center.

54.     Mayor Dabbs undermined Moon's authority as Director by refusing to consider Moon's input regarding rehiring Ms. Vickers, an experienced employee, and excluding Moon from consideration of candidates to replace Ms. Vickers.

55.     Defendant terminated Moon based upon her age and replaced her with an inexperienced director who was 20-plus years her junior. Younger employees with

less experience and seniority were not treated in a discriminatory or hostile manner and at all times were treated more favorably than Moon with respect to the terms, conditions, and pay in their employment with Defendant.

56.   Mayor Dabbs was an employee of Munford and at all times relevant to this Complaint acted as an officer and agent of the Town of Munford.

57.   Munford ratified the discriminatory actions of Mayor Dabbs by its City Council members unanimously agreeing to Moon's termination, by refusing to rehire Ms. Vickers, and excluding Moon from performing her job in selecting a replacement for Ms. Vickers to work at the Center Moon directed.

58.   As a proximate result of Defendant's unlawful intentional discrimination, harassment, and retaliation, Moon suffered different terms and conditions of employment than her younger co-workers.

59.   Such unlawful employment practices proximately caused Moon to suffer severe emotional distress, physical injury and pain, mental anguish, embarrassment, humiliation, shame, trauma, financial duress, wage and benefit loss, and financial loss for which she claims damages.

60.   Moon seeks declaratory and injunctive relief and an award of lost employment wages and benefits, back pay, front pay, interest, liquidated damages, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

14

## COUNT TWO

## DEFAMATION

61.     The Moon adopts and realleges 1-44 as if fully recited herein. This is a claim arising under the laws of the State of Alabama prohibiting defamation.

62.     Mayor Dabbs, Ms. Bussie, and Mr. Garrison slandered Moon by falsely accusing her of dishonest and criminal acts and relaying these comments to other individuals, including Munford's employees, senior center clients, and community members.

63.     Moon was subjected to negative verbal publicity based on Defendants' actions, words, and false accusations, which were intended to harm Moon. Defendants' acts were intentional and conducted with malice.

64.     Such unlawful actions proximately caused Moon to suffer severe emotional distress, physical injury, mental anguish, trauma and embarrassment, financial loss and the inability to secure employment within his community.

65.     Moon seeks declaratory and injunctive relief, reinstatement, award of lost wages, back pay, front pay, interest, compensatory and punitive damages for loss of career opportunity, humiliation, embarrassment, and mental anguish; costs, attorneys' fees and any and all such other relief the trier of fact may assess.

## COUNT THREE

## NEGLIGENT AND WANTON HIRING, TRAINING, SUPERVISION, AND RETENTION

66.     Moon adopts and realleges 1-44 as if fully recited herein.

67.     This is a claim arising under the laws of the State of Alabama to redress the negligent and wanton hiring, training, supervision, and retention of Munford's employees.

68.     Munford had a duty to provide a reasonably safe, non-hostile and non-discriminatory work environment to Moon and other employees over the age of forty (40).  Munford had actual notice of the actions complained of by Moon.

69.     Defendant, having such knowledge, negligently and wantonly failed to train and discipline those employees, who actively discriminated, harassed, retaliated, and conspired against Moon, namely Mayor Dabbs, Mr. Garrison, and Ms. Bussie, on an ongoing basis, and failed to protect Moon from further injury.

70.     Conditions created by Mayor Dabbs, Ms. Bussie, and Mr. Garrison were adverse and hostile and intended to cause Moon financial, physical, and emotional harm.

71.     As a proximate result of the Defendants' unlawful and unconstitutional conduct aforesaid, Moon suffered the following injuries:   different terms and

conditions of employment than other employees, severe emotional distress, physical injury, pain and suffering, humiliation, mental anguish, trauma and embarrassment, and financial loss.

72.    Moon seeks declaratory and injunctive relief, an award of lost employment benefits and wages, back pay, front pay, interest, compensatory and punitive damages for loss of career opportunity, humiliation and embarrassment, mental anguish, costs,  attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT FOUR

## INVASION OF PRIVACY

73.    The Moon adopts and realleges 1-44 as if fully recited herein.

74.    This is a claim arising under the laws of the State of Alabama against all Defendants for the invasion of Moon's right to privacy under the laws of the State of Alabama.

75.    Defendants cast Moon in a false light in the public eye by making public statements to the town's employees, clients of the Center, and community members at large that she was terminated due to theft from the Center.

76.    Defendants' conduct invaded the Moon's personal and emotional sanctum and proximately caused her to suffer embarrassment, humiliation, loss of

reputation, loss of wages and benefits, emotional distress, trauma, and mental anguish for which she claims damages as set out below.

77.    Moon seeks declaratory and injunctive relief, reinstatement, award of compensatory and punitive damages, mental anguish, costs, attorney's fees, and any and all such other relief the trier of fact may assess.

## COUNT FIVE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

78.    Moon re-alleges and incorporates by reference paragraphs 1-44 with the same force and effect as if fully set out in specific detail herein.

79.    This is a claim against all Defendants arising under the laws of the State of Alabama prohibiting the intentional infliction of emotional distress.

80.    The conduct of the Defendants described herein was extreme, outrageous, and beyond the bounds of decency.

81.    Such conduct is not condoned by society and should not go unpunished.

82.    The conduct of Defendants consisted of intentional acts which were employed to inflict severe emotional distress upon Moon.

83.    The repeated discriminatory remarks of Mayor Dabbs regarding Moon's age, being terminated due to age, and targeted damage to Moon's reputation after

Defendants publically announced that Moon was terminated for stealing, altered the Moon's reputation and ability to secure employment .

84.    Defendants' conduct proximately caused the Moon to suffer embarrassment, physical injury, pain and suffering, loss of pay and benefits, financial distress, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages as set out below.

85.    Moon seeks declaratory and injunctive relief, award of compensatory and punitive damages, mental anguish, costs, attorney's fees, and any and all such other relief the trier of fact may assess.

**WHEREFORE**, Moon respectfully requests the following relief:

A.    Grant a permanent injunction enjoining Munford, its officers, successors, assigns and all persons in active concert or participation with it, from engaging further in its discriminatory and retaliatory treatment on the basis of age;

B.    Order Munford to institute and carry out policies, practices, and programs which provide equal provisions and employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices, including implementing a policy against age discrimination and retaliation in the work place;

19

C.      Order Munford to make Moon whole by providing appropriate back pay, front pay, reinstatement, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, compensatory, punitive and liquidated damages;

D.      Award the Moon compensatory, punitive and liquidated damages;

E.      Award the Moon costs and expenses, prejudgment interest, and reasonable attorneys' fees; and

F.      Award such other and further relief this Court deems necessary and proper.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Respectfully submitted,

/s/ Alicia K. Haynes
Alicia K. Haynes ASB-8237-E23A

/s/ Sonya C. Edwards
Sonya C. Edwards ASB-8848-S73E

Attorneys for Plaintiff Judith Moon

**OF COUNSEL:**
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama  35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
E-mail:  scedwards@haynes-haynes.com

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL:**

Town of Munford
Attn: Peggy Bussie, City Clerk
115 Lions Road
Munford, Alabama 36268

Ms. Peggy Bussie
115 Lions Road
Munford, Alabama 36268

Mr. David Dabbs
687 Lake Robins Circle
Munford, Alabama  36268

Mr. Lee Garrison
100 1st Avenue South
Munford, Alabama 36268

**<u>PLAINTIFF'S ADDRESS:</u>**

Mr. Judith Moon
c/o Alicia K. Haynes
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, Alabama  35226